CLAUDE B. COPELAND AND HELEN C. COPELAND, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. ALMA O. CLAFLIN (NOW ALMA O. AHLRICHS), DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 12, 1951—Decided February 21, 1951.

Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.

*Mr. Louis B. LeDuc* argued the cause for appellant.

*Mr. James M. Davis, Jr.,* argued the cause for respondent.

The opinion of the court was delivered by

JAYNE, J. A. D. It is expedient to summarize the factual events from which the present litigation originated.

One Wilbur A. Claflin, now deceased, was the owner of a tract of land of approximately 92 acres situate in Pemberton Township, Burlington County. He conceived the purpose of utilizing the land for the cultivation of blueberries as a commercial enterprise. In furtherance of his purpose he caused the organization of Billsmere Corporation, to which he and his wife, the defendant, on February 24, 1941, conveyed the tract of land. Claflin subscribed in the aggregate to 400 shares of the common stock of the corporation, of which 20 shares were issued to his wife, and Richard A. Beyer and

his wife, Caroline A. Beyer, acquired 23 shares and 22 shares respectively. Claflin was president; his wife, treasurer; Caroline Beyer, secretary, and her husband, vice-president of the company.

In 1941 the plaintiffs Claude B. Copeland and his wife, Helen C. Copeland, who was Claflin's daughter by a former marriage, were afforded living quarters at the plantation and engaged to aid in the development of the enterprise.

The company was soon in need of funds and Copeland procured three successive loans from his father reaching, on or about June 1, 1942, the total sum of $1,750, which were admittedly received and expended by Claflin to defray the costs and expenses of the company.

In August of 1942 the Copelands resolved to terminate their employment and return to Massachusetts where they then contemplated the establishment of a blueberry plantation of their own. It was thereupon agreed between Mr. Claflin, Mr. Copeland, and with the acquiescence of the latter's father, that in substitution of the obligation to repay the debt of $1,750 in money, there should be delivered to the plaintiffs 10,000 of the blueberry plants which had been placed in the nursery that spring.

It is acknowledged that neither the indebtedness of $1,750 has been paid nor have the blueberry plants or any of them been delivered.

It is advantageous to exhibit here an excerpt from paragraph 28 of the answer of the defendant:

"28. Answering Paragraph 28, defendant admits a demand by complainants upon her for the delivery of the aforesaid 10,000 blueberry plants or of their money value but denies that she refused to deliver the same or that she made any response to the said demand."

To resume the narrative of events, it is significant to relate that Mr. Claflin died on July 22, 1943, leaving a will in which he devised and bequeathed his entire estate to the defendant, and pursuant to the testator's nomination the defendant as the sole executrix assumed the administration of the decedent's estate. The defendant thereupon purchased the shares of capital stock in Billsmere Corporation held by Mr. and

Mrs. Beyer, and since the corporation had no creditors other than the plaintiffs, the defendant proceeded to dissolve it. In consideration of the surrender and cancellation of the stock certificates, the tract of land constituting the plantation of the company was conveyed by the trustees in dissolution to the defendant in December, 1944. The corporation was dissolved on May 26, 1944. Thus the defendant acquired all the estate of her husband and all of the assets of the corporation.

It is to be observed that the defendant was a trustee in the dissolution of the corporation and the sole legatee under the last will and testament of Wilbur Claflin, deceased. In the latter capacity she executed a refunding bond in the penal sum of $11,840.

The present action was instituted in the former Court of Chancery and the final hearing was conducted before the late Vice-Chancellor Woodruff, who died before the announcement of his decision. The transcript of the evidence and the briefs were submitted by agreement of counsel to Judge Rogers of the Superior Court, who assumed the determination of the issues and authorized the entry of a judgment in the sum of $2,500 in favor of the plaintiffs and against the defendant which should be a lien "paramount and prior, *both at law and in equity,* to any rights of the defendant" in the tract of real estate to which we have referred.

It is sufficient to state that our examination of the factual issues (*Rules* 1:2–20 and 4:2–6) persuades us that the findings of fact by Judge Rogers are supported by the proofs.

The pressure of the argument of the appellant is noticeably applied to the contention that the bill of complaint did not allege, nor did the proofs sustain, a cause of action cognizable by the Court of Chancery. The supporting reason given is that there was an adequate remedy at law. "Sweetest Echo, sweetest nymph, that liv'st unseen within thy airy shell."

We pause first to reflect upon the manner in which this cause of action was ultimately presented for consideration and determination.

Issue having been joined, the testimony was taken and the evidence introduced before the vice-chancellor. The cause

remained undetermined at his death. The Court of Chancery was absorbed. Counsel then by agreement and for reasons of expediency transported the transcript of the evidence previously introduced in the Court of Chancery to the Superior Court having jurisdiction both at law and in equity, where they voluntarily submitted the cause of action for determination. At no stage of the proceedings did the defendant demand a trial by jury. See, however, in this particular, *Richman v. Schwartz,* 130 *N. J. Eq.* 495 (*Ch.* 1941); *Weber v. L. G. Trucking Corp.,* 140 *N. J. Eq.* 96 (*E. & A.* 1947).

Counsel for the appellant in his oral argument before us frankly acknowledged that in the circumstances the judgment ought not be reversed merely because there was not a trial by jury. But it is evident that he now conjectures that it would be advantageous to the defendant to be afforded a jury trial, and hence the essence of the reason for the requested reversal of the judgment on the ground assigned is to enable the defendant to attain that opportunity by having the case returned to the Law Division instead of the Chancery Division of this court for a retrial.

However, whether viewed as a cause of action against the defendant for the breach of her fiduciary duty as trustee of the assets of Billsmere Corporation in dissolution, *R. S.* 14:13–5; *Keen v. Maple Shade Land & Imp. Co.,* 63 *N. J. Eq.* 321 (*E. & A.* 1901); *Fox v. Radel Leather Mfg. Co.,* 121 *N. J. Eq.* 291 (*E. & A.* 1937); *Matawan Bank v. Matawan Tile Co.,* 2 *N. J.* 116 (1949), or as one by a creditor against the defendant as the legatee of the decedent allegedly the debtor, *Fidelity Union Trust Co. v. Carter,* 121 *N. J. Eq.* 78 (*Ch.* 1936), obviously the plaintiffs on either basis pursued their equitable right as creditors to follow assets which had been distributed without providing for their debt and sought to establish an equitable liability. *Restatement, Restitution,* 650, § 161.

It is our conclusion that the cross-appeal should be dismissed and that the judgment for the plaintiffs should be affirmed.